**In the United States District Court
for the District of Kansas**

Case No. 24-cv-4104-TC

DANIEL LEWIS CRAIG,

*Plaintiff*

v.

TOPEKA RAINTREE APARTMENTS, LLC, ET AL.,

*Defendants*

## MEMORANDUM AND ORDER

Daniel Craig sued Topeka Raintree Apartments, LLC and Landmark Realty, LLC, alleging that two maintenance workers at the Topeka Raintree Apartments injured him when they forcibly removed him from the property. Doc. 36.[1] The defendants move to dismiss. Doc. 41. For the following reasons, that motion is granted.

### I

[1] The Amended Complaint also lists "Raintree Apartments," which it describes as the complex's "owner and leasing company," Doc. 36 ¶ 4, and unidentified John Doe entities and individuals, *id.* at 1. Craig does not state that "Raintree Apartments" is a legal entity distinct from the two limited liability companies he sued, and the John Doe defendants have not been identified. In addition, Craig's state-court petitions named a Kansas entity called Landmark Realty, LLC. After removal, Craig filed an Amended Complaint substituting a different Landmark Realty, LLC, a California entity that manages the complex, and the Kansas entity was terminated as a party. *Compare* Doc. 1-1 at 1, ¶ 2, *with* Doc. 36 at 1, ¶ 2; *see* Doc. 42 at 3. Unless otherwise specified, references to Landmark in this Order are to the California entity, which joined the motion to dismiss. Doc. 41.

**A**

The defendants move to dismiss pursuant to Rule 12(b)(6). Under that standard, a federal district court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 332 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation with multiple defendants).

**B**

This lawsuit concerns actions occurring on January 13, 2022. On that date, Craig went to the Raintree Apartments in Topeka, Kansas. Doc. 36 ¶¶ 8, 10. While attempting to locate the resident he intended to visit, Craig encountered two of the defendants' maintenance

employees, who demanded "with no stated reason" that he leave and then "attempted to forcefully remove" him "through excessive and unnecessary force," injuring him. *Id.* ¶ 11. The property manager and the two maintenance workers then blocked Craig and the resident into a parking space, further restraining him. *Id.* As a result, Craig alleges permanent injuries to his jaw, teeth, face, and nerves, including the loss of teeth. *Id.* ¶ 16.

He first filed suit on January 16, 2024. *See Craig v. Landmark Realty LLC*, No. SN-2024-CV-000026 (Shawnee Cnty. Dist. Ct.); Doc. 42-2; Doc. 42-3.[2] He sued Landmark Realty, LLC, Topeka Raintree Apartments, LLC, Raintree Apartments, John Doe, LLC, and John Doe, Inc. for negligent hiring, negligent retention, and negligent training. Doc. 42-3. The docket reflects no further activity by Craig. Notably, he never requested a summons and never served any defendant. Doc. 42-2 at 2–3.

On March 25, 2024, the state court noted that Craig had not served the petition and warned that it would dismiss the case on April 16, 2024, unless a party gave "a satisfactory explanation as to why the case should remain open." Doc. 42-4 at 3. No one did. On April 25, 2024, the court dismissed the case without prejudice for lack of prosecution under K.S.A. 60-241(b)(2). Doc. 42-5 at 3.

On July 26, 2024, Craig filed suit again in the District Court of Shawnee County, Kansas. Doc. 1. After receiving service, Topeka Raintree Apartments, LLC timely removed to federal court. Doc. 1-1. The parties characterize the allegations in this suit as being "virtually identical" to the first lawsuit. Doc. 42 at 2; Doc. 43 at 11. The defendants move to dismiss the claims, asserting they are barred by the statute of limitations. Doc. 41.

---

[2] The entire docket and all underlying pleadings concerning the state case can be found by querying the Kansas District Court Public Access Portal. That tool is available at https://prodportal.kscourts.gov/prodportal. *See* Fed. R. Evid. 201(b)(2) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008) (holding, on a Rule 12(b)(6) motion, that the court could take judicial notice of state court's filings in the underlying litigation).

## II

This lawsuit was filed outside of the governing statute of limitations. And, because the earlier suit was never commenced, the Kansas savings statute on which Craig relies does not apply. As a result, the motion to dismiss is granted.

### A

Kansas gives a plaintiff two years to bring negligence claims. K.S.A. 60-513(a)(4); *see also* Doc. 43 at 1 (agreeing that the two-year period governs). The incident occurred on January 13, 2022, Doc. 36 ¶ 10, so the limitations period ran through January 16, 2024.[3] Craig did not file this lawsuit until July 26, 2024. Doc. 1-1 at 1; Doc. 42-1 at 2. Unless something extends the period, the statute of limitations bars his claims. *Univ. of Kansas Mem'l Corp. v. Kansas Power & Light Co.*, 31 Kan. App. 2d 177, 181 (2003) (applying K.S.A. 60-513(a)(4) and holding that negligence actions must be brought within two years).

Craig argues that the Kansas savings statute, K.S.A. 60-518, makes his second lawsuit timely. Doc. 43 at 7–11. That statute provides that "[i]f any action be commenced within due time, and the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff . . . may commence a new action within six (6) months after such failure." K.S.A. 60-518. In essence, the statute gives a plaintiff whose timely action failed for reasons other than the merits a short grace period to sue again. *Seaboard Corp. v. Marsh Inc.*, 284 P.3d 314, 321 (Kan. 2012); *Lozano v. Alvarez*, 394 P.3d 862, Syl. ¶ 1 (Kan. 2017). If the statute applies here, Craig met its deadline, as he filed this case well within the six-month window.

---

[3] Kansas applies the "anniversary date" method for calculating the statute of limitations, which means Craig typically would have been required to file suit no later than January 13, 2024. *State ex rel. Quinn v. Johnson*, 868 P.2d 555, 559 (Kan. Ct. App. 1994). But that day was a Saturday, the next day (January 14, 2024) was a Sunday, and the day after (Monday, January 15, 2024) was Martin Luther King Jr. Day. So the statute of limitations was extended to the next business day, Tuesday, January 16, 2024. *See* K.S.A. 60-206(a). Kansas law, including its rules for computing the limitations period, governs because a federal court sitting in diversity "applies the substantive law of the state where it is located, including the state's statutes of limitations." *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1210 (10th Cir. 2013).

The defendants argue that the statute does not apply because the original suit was never "commenced within due time" under Kansas law. Doc. 42 at 6–10. In federal court, a plaintiff commences an action simply by filing a complaint. Fed. R. Civ. P. 3. But Kansas has long taken a different approach. A Kansas civil action "is commenced at the time of" filing "if service of process is obtained . . . within 90 days after the petition is filed," a period the court may extend by 30 days for good cause; otherwise, the action is commenced upon "service of process." K.S.A. 60-203(a)(1)–(2).

The Kansas approach means that a case may be filed but not commenced. As the Kansas Supreme Court has put it, "a lawsuit is not properly commenced until service of process is obtained and, except for an extension for good cause shown, that service must occur within 90 days of the filing of the petition for the commencement date to be deemed the filing date of the petition; otherwise, the action is deemed commenced when service of process is completed." *Fisher v. DeCarvalho*, 314 P.3d 214, 221 (Kan. 2013); *accord Perdue v. Kepka*, No. 23-1196, 2024 WL 3950830, at *4 (D. Kan. Aug. 27, 2024). Courts have consistently applied that rule. *See, e.g., Newell v. Brollier*, 722 P.2d 528 (Kan. 1986) (holding that because the plaintiff never obtained service, the original action never commenced per K.S.A. 60-203); *Campbell v. Hubbard*, 201 P.3d 702, 704–05 (Kan. Ct. App. 2008) ("Under Kansas procedural law . . . the case was not 'commenced' until service occurred"); *see also Kirtdoll v. City of Topeka*, 315 F.3d 1234, 1235 (10th Cir. 2003) ("In order to take advantage of K.S.A. § 60-518, Plaintiff must have served Defendants in the state court suit before he dismissed it. Otherwise, the state court suit never 'commenced.'").

Given this definition, Craig never commenced his first lawsuit. He filed his petition in Shawnee County on January 16, 2024. Doc. 42-2 at 2–3. But he never served any defendant, requested a summons, or asked to extend the 90-day service period. *Id.* The 90-day period expired on April 15, 2024, and the state court dismissed the case ten days later. Doc. 42-5 at 3. And because Craig never served anyone, the action never commenced under K.S.A. 60-203(a)(2). *See Read v. Miller*, 802 P.2d 528, 531–32 (Kan. 1990) (a plaintiff must seek any extension within the 90-day period because "once the 90-day period has expired, there is nothing to extend, and no period to prolong"); *Fisher*, 314 P.3d at 221. Accordingly, an action that never commenced was not "commenced within due time," the savings statute does not apply, and the

claims are time barred. *Newell*, 722 P.2d at 530; *Handy v. Reed*, 81 P.3d 450, 455 (Kan. Ct. App. 2003); *Kirtdoll*, 315 F.3d at 1235.

**B**

Craig raises a number of counterarguments. Each fails.

For one, Craig argues that it is improper for a court to consider the state-court records attached to the defendants' motion. Doc. 43 at 1–7. But in accordance with Fed. R. Evid. 201(b)(2), courts may take judicial notice of documents, such as the attached records here, that have a direct relation to the matters at issue. *White v. Lucero*, 135 F.4th 1213, 1219 (10th Cir. 2025). And, contrary to Craig's contention, Doc. 43 at 1–7, facts subject to judicial notice may be considered without converting the motion to dismiss into a motion for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).[4]

Craig's objection is also curious given that he needs the prior lawsuit to save his subsequent suit. The Amended Complaint pleads the incident date, Doc. 36 ¶ 10, and the petition's file stamp shows he sued more than two years later, Doc. 1-1 at 1, and, as noted above, those facts would bar his claims unless the savings statute applies. *See Wyo-Ben Inc. v. Haaland*, 63 F.4th 857, 866 (10th Cir. 2023) (noting "[W]e may resolve '[a] statute of limitations defense . . . on a [Rule] 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished."). And "when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute." *Schell v. Chief Just. & Justs. of Okla. Sup. Ct.*, 11 F.4th 1178, 1192 (10th Cir. 2021) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)). Thus, Craig must establish a factual basis for avoiding the bar. *Id.* His only allegation in that regard—that he "timely refiled" under K.S.A. 60-518, Doc. 36 ¶ 5—is a legal conclusion. Without the state-court records, nothing would show that the

[4] Craig does nothing to meaningfully call into doubt the records' authenticity. And they match the publicly available records from the underlying proceedings. *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (noting courts "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity").

first action was commenced within due time, thus making his argument self-defeating.

For another, Craig's reliance on *Hadley v. Koerner*, No. 17-1221, 2018 WL 2971678 (D. Kan. June 12, 2018), is misplaced. Doc. 43 at 8–11. *Hadley* held that the savings statute applied to the plaintiff's re-filed claim and turned on whether the second suit was filed within six months of the first action's failure. 2018 WL 2971678, at *2. Craig argues he satisfies the savings statute's elements as described in *Hadley* because he filed his first suit on the last day of the limitations period, and that the savings statute asks only whether he timely filed the first action—not whether he served it. Doc. 43 at 8–11. Craig misreads *Hadley*: it did not address commencement at all, nor did the parties dispute the timeliness of the first action filed in federal court, where, unlike Craig's first suit filed in state court, filing alone commences an action. *Hadley*, 2018 WL 2971678, at *1–2; Fed. R. Civ. P. 3.

Nor does the observation that the savings statute "does not explicitly incorporate the requirement that a suit be served within 90 days" help Craig. Doc. 43 at 8 (quoting *Seaboard*, 284 P.3d at 326). In context, the statement Craig champions merely explains why the savings statute may reach a first action filed in another jurisdiction, where that forum's procedural rules govern commencement. *Seaboard*, 284 P.3d at 326 (quoting *Campbell*, 201 P.3d at 705); *see also Alexander v. Sandoval*, 532 U.S. 275, 282 (2001) (a court is "bound by holdings, not language"). When the first action is filed in Kansas, the same decisions require service within 90 days. *Campbell*, 201 P.3d at 704–05 ("If Kansas law applies to determine whether the action was commenced within due time, Campbell loses."); *see Seaboard*, 284 P.3d at 328 (noting that no one disputed commencement).

Craig also argues that the state court dismissed the first lawsuit without the advance notice as required by K.S.A. 60-241(b)(2). Doc. 36 ¶ 5; Doc. 43 at 4–6. Even if true, that would not matter. Those who request more time to serve must do so before the 90-day service period expires; after that, there is "nothing to extend, and no period to prolong." *Read*, 802 P.2d at 531–32. Craig's 90-day period ran out on April 15, 2024, and he had not asked for an extension. So by the time the state court dismissed the case ten days later, notice could not have helped him as the first action had already failed to commence, and no order could have revived it.

Nor does it matter that the court dismissed the prior case "without prejudice." *Contra* Doc. 43 at 8–9, 11. It is, of course, true that dismissal without prejudice means that Craig was free to refile his suit, but that does not make his refiled action timely. The Kansas Court of Appeals rejected the same argument in *Handy*. In that case, the trial court had dismissed the first action "without prejudice subject to refiling within a six-month period." *Handy*, 81 P.3d at 452. Even so, because the plaintiff had never served the defendant, the first action never commenced and the order dismissing without prejudice "d[id] not comply with the requirements of K.S.A. 60-203 and K.S.A. 60-518 and d[id] not validly extend the statute of limitations." *Id.* at 455; *see also Johnson v. Fisher*, 497 F. App'x 822, 823–25 (10th Cir. 2012) (holding that the savings statute did not apply to an unserved first action dismissed without prejudice).

Craig next points out that Rule 3 and Black's Law Dictionary define "commence" as the filing of a complaint. Doc. 43 at 10. True, but that is irrelevant. The question here is whether Craig's first action, filed in Kansas state court, commenced under Kansas law. *Elm Ridge*, 721 F.3d at 1210 ("A federal court sitting in diversity applies . . . the state's statutes of limitations."). And Kansas has defined when a Kansas action commences, K.S.A. 60-203(a). That definition controls. *See Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) ("When a statute includes an explicit definition, [courts] must follow that definition, even if it varies from a term's ordinary meaning.").

Craig also blames a cybersecurity incident, which he says complicated the filing of his first petition. Doc. 43 at 2, 5, 10–11. But the problem with his first suit was not when he filed it; it was that he failed to serve it so as to commence it under Kansas law. Craig fails to explain how that incident prevented him from requesting a summons, serving the defendants, or seeking an extension during the three months that followed. This Order will not attempt to divine or construct an argument for him. *See United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020) (noting courts "do not, or should not, sally forth each day looking for wrongs to right"). And, to the extent Craig contends that the state court's dismissal order was itself invalid, Doc. 43 at 9, that does not matter either. The 90-day service period had run before the

dismissal, so the first action never commenced regardless of whether the dismissal was proper. *See Read*, 802 P.2d at 532.[5]

**III**

For the foregoing reasons, the defendants' Motion to Dismiss, Doc. 41, is GRANTED.

It is so ordered.

Date: September 30, 2026

s/ Toby Crouse
Toby Crouse
United States District Judge

[5] It is unnecessary to resolve the defendants' argument that the savings statute cannot apply to Landmark Realty, LLC because the entity now sued was not named in the first lawsuit, Doc. 42 at 10, or Craig's response that Landmark "has always been a party," Doc. 43 at 11–12. As noted earlier, the lawsuit never commenced, so the claims against Landmark would be time barred for the same reason as the claims against Topeka Raintree. *See Newell*, 722 P.2d at 530; *Handy*, 81 P.3d at 455.